The question presented in this case is the right of plaintiffs to collect the purchase money for a parcel of land in the corporate limits of the city of Charlotte which plaintiffs, heirs at law of Samuel Whittkowski, deceased, have contracted to sell to defendants for $20,000, on condition that plaintiffs could make an indefeasible fee-simple title to said land, including the portion of the land designated as Meadow's Street and other streets and alleys shown thereon, as they appear in a certain plat, theretofore made by said Samuel Whittkowski, former owner, and recorded in registry office of Mecklenburg County on 14 July, 1905.
Defendants, admitting execution contract and a readiness and ability to pay the stipulated price, resist recovery on the ground that there had been, by reason of said plat, an irrevocable dedication of the streets and alleys, etc., shown on said plat.
There was judgment for plaintiffs, and defendants excepted and appealed.
Plaintiffs, devisees and heirs at law of Samuel Whittkowski, deceased, having contracted to sell to defendants a certain piece of land, now within the corporate limits of the city of Charlotte, for $20,000, and defendants resisting recovery on the alleged ground that plaintiffs are not in position to make a free and unincumbered fee-simple title, as required by the stipulations of the contract, the pertinent facts affecting the validity of the title offered are set forth in the case agreed as follows: *Page 544 
"That in 1900 said Samuel Wittkowski owned a tract of land lying in the then suburbs of Charlotte, consisting of a block bounded on the northeast by Elizabeth Avenue, on the southeast by Cecil Street, on the southwest by Providence Road, or East Fourth Street Extended, and on the west by Little Sugar Creek.
"Some time thereafter, and prior to July, 1905, he had this block of land platted into numerous lots, on which plat (which was recorded) were left certain open spaces between the lots, marked `alleyways,' and another open space 50 feet in width, and extending through the center of the block from Cecil Street to the creek, marked `Meadow Street,' the whole square being boggy and swampy and lying several feet below the level of the surrounding streets.
"Thereafter the said Wittkowski conveyed two lots off of this block to one Howie by deeds duly recorded in the register's office for Mecklenburg County in 1905 and 1907, respectively. Since the latter date no other lots have been sold by the owners of said block, and no encumbrances whatever has been placed thereon.
"Prior to the submission of this controversy to the court, the said Howie, for a valuable consideration, by deed duly executed and delivered, relinquished all rights of every nature and description, which he may have had in said alleyways and strip of land, designated on said map as `Meadow Street,' and consented that the owners of said block might perpetually close the same, and use the entire block, with the exception of the two lots sold him, for such purposes as they may see fit.
"Neither prior nor subsequent to the making and recording of said map has the public or any other person used the said so-called `Meadow Street' or any of the land shown on the said map, as streets or other public or private ways, and if the making and recording of the map amounted to a dedication of said so-called street and alleyways to public use, the proper authorities of said city have never by any act or deed accepted the said dedication.
"The properly constituted authorities of the city of Charlotte, upon having called to their attention the fact that the said map had been made and recorded, did, by resolution duly adopted, prior to the submission of this controversy to the court, absolutely refuse to accept said alleged dedication, or to assume any of the burdens or responsibilities of opening, grading, or maintaining said so-called streets and alleys, for the reason that it was not only impracticable, but unnecessary for the public welfare that the said city should open up, grade, and maintain the same for public use."
It is the recognized principle here and elsewhere that, when the owner of suburban property or other has the same platted, showing lots, parks, streets, alleys, etc., and sells off the lots or any of them, in reference to *Page 545 
the plat, this, as between the parties, will constitute a dedication of the streets, etc., for public use, although not presently opened or accepted or used by the public. Elizabeth City v. Commander, 176 N.C. 26; Wheeler v.Construction Co., 170 N.C. 427; Green v. Miller, 161 N.C. 25.
In many of the cases on the subject, this is spoken of as an irrevocable dedication, but the principle is dependent on the doctrine of equitable estoppel, giving the purchaser who has bought and taken title in reference to the plat, to have the same observed in its integrity. It is through his position and by reason of it that the equity must be made effective, and, so far as examined, in all the cases where this expression has been used, the purchasers, or some of them, were insisting on their rights in the matter, or were in a position to do so. Green v. Miller, supra; Hughes v.Clark, 134 N.C. 457-463; Collins v. Land Co., 128 N.C. 563; Conrad v.Land Co., 126 N.C. 776; S. v. Fisher, 117 N.C. 733.
In S. v. Fisher, Associate Justice Avery states, we think, the correct principle applicable, as follows: "If he and those claiming under him had sold a single lot abutting on this apparent extension of North Elm Street, he, and those claiming under him, would have been estopped from denying the right of such purchaser and those in privity with him to use the street as laid down in the plat, . . . and this dedication of the easement, appurtenant to the land sold, would have been as between the parties
irrevocable, though the street had never been accepted by the town for public use," citing Moose v. Carson, 104 N.C. 431.
"The estoppel in pais arising out of the fact that the grantee in such cases has been induced to part with his money or its equivalent upon the representation of the grantor that a highway would be opened, makes the street as between them what it was represented to be, citing Grogan v. Townof Haywood, 4 Fed., 160." And that this is the true character and effect of such a dedication is recognized in the opinion of Walker, J., in Green v.Miller, who states the principle as follows: "Where the owner of real property lays out a town or village upon it, or even a plat of ground, and divides it into blocks or squares and subdivides it into lots or sites for residences, which are intersected by streets, avenues, and alleys, and he sells or conveys any of these lots with reference to the plan or map of the property, or where he sells and conveys according to the map of a city or town in which the land is so laid off, he thereby dedicates the streets and alleys to the use of those who purchase the lots, and also to the public under certain circumstances not necessary to be now and here stated."
In so far as the general public are concerned, and without reference to the claims and equities of the individual purchaser, it is fully understood that a dedication is never complete until acceptance. Usually *Page 546 
creating burdens as well as conferring benefits, the attendant duties may not be imposed upon the public unless it has in some proper way consented to assume them. True, this acceptance may be shown not only by formal action on the part of the authorities having charge of the matter, but, under certain circumstances, by user as of right on the part of the public or other facts, but unless and until acceptance has been in some way established, it should be more properly termed an offer to dedicate on the part of the owner, and may be recalled by him before acceptance had and usually is deemed to be recalled by deed in repudiation of the plat, and, at times, by deed conveying the land as an entirety without reference to the plat or any recognition of it and a user, according to the terms and intent of the deed.
These general positions are recognized and approved in Tise v. Whitaker,146 N.C. 374; State Co. et al. v. Finley, 150 N.C. 726; S. v. Fisher,117 N.C. 733, and authoritative decisions on the subject in other jurisdictions are very generally to the same effect. Dickinson v. ArkansasImp. Co., 77 Ark. 570; People v. Johnston, 237 Ill. 237; Minneapolis,etc., R. R. Co. v. Town of Butt, 104 Iowa 198; Lightcap v. Town of Judson,154 Ind. 43; Schmidt v. City and County San Francisco, 100 Cal. 302; ThePeople N.Y. v. Underhill, 144 N.Y. 316; Steinauer v. The City of Tell,146 Ind. 490.
In People of N.Y. v. Underhill it was decided that "to constitute a public highway by dedication, there must not only be an absolute dedication, but an acceptance and formal opening by the proper authorities or a user."
In Lightcap's case, supra, it was held: "To constitute a dedication of land for highway purposes, there must be an offer of the land by the owner, and acceptance of such offer by the public or by the proper local authorities.
"The owner of certain real estate offered to dedicate a part thereof to the public for highway purposes. Before the offer was accepted such owner sold and conveyed the real estate, the deed of conveyance containing no reservation of the part so offered to the public: Held, that the conveyance constituted a revocation of the offer to dedicate."
And in Schmidt v. San Francisco, supra: "Where the dedication of a street or part of a street has not been accepted, or the property used by the public, it is purely a question of estoppel in pais whether it can be revoked or not. If no one has acted upon the offer in such a mode as to be injured by the revocation the owner may revoke the dedication, even though it be an actual dedication, and not a mere offer.
"Where a cul de sac has been marked upon a recorded map of a tract surveyed into streets, blocks, and lots, and such cul de sac was established in a block which was entirely unimproved, the owner of the tract had a right to revoke the dedication or offer to dedicate the cul desac, and a *Page 547 
conveyance of the entire block accompanying it by a description making no reference to the cul de sac, or to any alleged streets, amounts to a revocation if the purchaser had no notice of any fact which would have estopped the grantor from revoking."
A proper application of these principles to the facts presented are in full support of his Honor's ruling that the defendant must comply with his contract of purchase, it appearing that the only individuals who have ever bought or now hold any of the lots have executed a formal deed relinquishing any and all rights in the streets or alleys as indicated in the plat, and, as to the public, that these streets and alleys have none of them ever been opened or used, and not only have the public streets and avenues of the city of Charlotte been extended in entire disregard of the streets and alleys shown on the plat, but the city authorities having charge of the matter under the charter and general laws have made formal renunciation of the public rights concerning them. There is nothing inElizabeth City v. Commander, 176 N.C. 26, that in any way militates with the disposition we make of the present appeal. That case proceeded on the idea that the deed of owner was not a revocation, but was in full recognition of the plat containing his offer of dedication.
We have not been inadvertent to the statute, Laws 1911, ch. 55, providing for the registration of plats of this character. The law was no doubt enacted in view of a decision of this Court in Sexton v. ElizabethCity, 169 N.C. 385, in which it was held that a purchaser in reference to a second plat who had registered his deed would take precedence over one under a former plat, but who had failed to have his deed registered; this on the ground that, as no statute provided for registration of plats, the date of registration of the deed would determine the matter. The statute was designed to regulate priorities as between two conflicting dedications, and does not and was not intended to effect the general principles, dedication and acceptance, and the owner's right of revocation which we have held to be controlling on the facts of this record.
There is no error, and the judgment for plaintiffs is
Affirmed.