ATLANTIC COAST LINE RAILROAD COMPANY v. TOWN OF AHOSKIE.

(Filed 13 April, 1932.)

1. **Dedication A b — Evidence held insufficient to show dedication of land by the owner for public use.**

In order to a dedication of private property to the public use there must be an intention on the part of the owner to dedicate, evidenced by an unequivocal overt act or verbal expression, and an acceptance by the town authorities arising in some appropriate manner, and where a railroad company has had lands conveyed to it for use as a depot, evidence

tending to show that the railroad company had so used the land without interruption, but had permitted the public to use a portion thereof as a street to the extent it did not interfere with its use as a depot, and there is no evidence of a grant or conveyance to the town, the evidence is insufficient either to show a dedication by the railroad or acceptance by the city for street purposes or to operate as an estoppel of the railroad company, and where the town has paved a part of the land for use as a street and has attempted to assess the railroad company as an abutting landowner, the railroad company is entitled to have the land condemned and compensation paid less the amount of the assessments against it.

2. **Adverse Possession D b—Evidence disclosed only permissive use by public which is insufficient to establish prescriptive title.**

Where a railroad company, in the use of its land as a depot, has allowed the public to use a part thereof as a street to the extent that such use did not interfere with its use as a depot, the use by the public is permissive, and the town may not claim an interest in the land by adverse user.

3. **Municipal Corporations G d—Abutting owner may raise question of ownership of property in proceedings by city to levy assessments.**

The ownership of the property is a prerequisite to the right of a city to levy assessments for public improvements under the statute against abutting owners, and the ownership of the property as affecting the validity of the assessment against an abutting owner may be raised in the assessment proceedings.

APPEAL by plaintiff from *Harris, J.,* and a jury, at October Term, 1931, of HERTFORD. Reversed.

On 29 May, 1890, Dr. Jesse H. Mitchell and others conveyed to Norfolk and Carolina Railway Company, a certain piece of land in the town of Ahoskie, containing one and a half acres. The deed was duly recorded on 26 June, 1890, in the register of deeds office for Hertford County, N. C. The plaintiff contends that it owns the said land described in said deed as successor in title. The deed recites: "That the said parties of the first part, in consideration of the benefit to them of the location by said company of a depot at Ahoskie, and also the reconveyance to them of the land that has been used by the said company for the purpose of a depot at Ahoskie, and for the further consideration of one dollar to them, the receipt of which is hereby confessed, have bargained, sold and conveyed, granted and given to the party of the second part, their successors and assigns, the following real estate (describing same). . . . To have and to hold the said granted land to the said Norfolk and Carolina Railway Company, its successors and assigns, as long as it shall be used for a depot." 

The defendant, town of Ahoskie, claims part of the above described land as a street and has had it paved and has made assessment against

the plaintiff, same being a space approximately 421.4 feet on west side, 472.2 feet on east side, 43.5 feet wide. The plaintiff contends that it was its property.

The issues submitted to the jury and their answers thereto, were as follows:

"1. Has the town of Ahoskie acquired the title to the area covered by the paving in question by adverse possession as alleged? Answer: Yes.

2. Prior to the levying of the assessment in question had the area covered by said pavement been dedicated as a street? Answer: Yes.

3. Is the railroad estopped to deny that the area covered by pavement was a public street at the time said paving assessment was levied? Answer: Yes.

4. Is the area over which the pavement in question was laid a public street in the town of Ahoskie? Answer: Yes (by the court)."

The judgment of the court below is as follows: "This cause coming on to be heard and being heard by the court and a jury and the jury having answered the issues as follows (setting forth issues and their answers thereto). The last issue having been answered by the court as a matter of law upon the basis of the jury's verdict upon the first three issues; and at the beginning of the trial it having been admitted by the railroad company that the proceedings in which this assessment is attempted to be collected comply in form to the requirements of the statute, and that the computation of the assessment in the sum of $2,547.71 is correct in amount and follows the statutory method, and that the railroad company contests the assessment solely upon the ground set out in its statement of the facts on appeal to the Superior Court from paving assessments: It is now, therefore, on motion of W. W. Rogers, and Ehringhaus & Hall, attorneys for the town of Ahoskie, ordered, decreed and adjudged that the said town of Ahoskie recover against the said Atlantic Coast Line Railroad Company the sum of two thousand five hundred forty-seven and 71/100 dollars ($2,547.71), with interest on same from 22 September, 1925, as paving assessment, together with the costs of this action to be taxed by the clerk of this court. This recovery is declared a charge against the abutting property of the railroad."

The plaintiff excepted to the judgment as signed, made numerous exceptions and assignments of error, and appealed to the Supreme Court. The material ones and necessary facts will be considered in the opinion.

*F. S. Spruill, V. E. Phelps and MacLean & Rodman for plaintiff.*
*W. W. Rogers and Ehringhaus & Hall for defendant.*

CLARKSON, J. Was there sufficient evidence to be submitted to the jury to sustain the issues above set forth? We think not. This case was here before: *R. R. v. Ahoskie,* 192 N. C., 258.

In *Efird v. Winston-Salem,* 199 N. C., at p. 37, is the following: "In *R. R. v. Ahoskie, supra,* there was a dispute of fact as to whether the land was a public street or the property of the railroad. The railroad submitted itself to the assessment procedure, protested to the work being done as the property belonged to it and not to the town of Ahoskie, and appealed under C. S., 2714, from the confirmation. The Court said, at p. 262: 'The conclusion of the whole matter, therefore, is whether or not this assessment was valid. If Railroad Street is a public street of the town of Ahoskie, then the town had the right to make a valid assessment against abutting owners. If it is not a public street, then no assessment under our statute could be properly made. This is a question of fact to be determined and established by competent evidence, and certainly, the validity of the assessment under our statutes can be challenged in the assessment proceedings.' "

C. S., 434, the statute of limitations applicable to railroads, etc., is thoroughly considered *In the Matter of Assessment Against R. R.,* 196 N. C., 756. See Public Laws 1931, chap. 222. In this case, on 14 October, 1925, Mayor L. C. Williams of Ahoskie, certified the appeal to the Superior Court from the assessment made in the proceedings. In that proceeding the testimony of John E. Vann, undisputed by Mayor L. C. Williams, is as follows: "In this discussion (before the governing body of the town of Ahoskie), I told them that we had a deed for it. I told them it is our property and you are using it and I am sure you do not want to use other folks' property without compensation, and the commissioners said 'We don't claim the property.' They had no deed, they did not say so in so many words but said 'It is yours,' and that is about all that I know that happened. I insisted on them signing a contract and they would not do so. That was some months before the present paving was laid. Q. Was that in 1923? A. Yes, I think it was in 1923. Mr. Williams thinks that was the time. I have talked with Mr. Williams several times."

"Proceedings re: Railroad Street Assessment for Street Improvements, and appeal by the Atlantic Coast Line Railroad Company. At said hearing appeared the Atlantic Coast Line Railroad Company and through its attorneys Messrs. John E. Vann and V. E. Phelps entered its protest, filed a written statement setting out their contentions and offered evidence in support of said contentions, which contentions briefly stated are: (1) That the A. C. L. Railroad Company has a deed for land covered by street against which its street assessment is charged.

(2) That town has acquired no lawful right to use said land for street purposes. (3) That street has only been used permissively. (4) That property cannot be taken without due process of law (U. S. Constitution, sec. 1, Art. XIV)."

We think the above contentions made by plaintiff correct. Under the evidence in this case, we do not think the town of Ahoskie acquired the said land of plaintiff railroad company by condemnation, grant, dedication or prescription. *Durham v. Wright,* 190 N. C., 568. There was no sufficient evidence of estoppel to have been submitted to the jury.

In *Gault v. Lake Waccamaw,* 200 N. C., at p. 599, we find: "The following observation is made in McQuillin's Municipal Corp., Vol. 4, 2d ed., part of sec. 1662 and 1663, pp. 471-2. 'Most of the streets, alleys, squares and parks in municipal corporations, have been acquired by a voluntary dedication thereof by the owner to the public. The law relating to dedication is therefore of much importance as a part of the law of municipal corporations. . . . The owner's offer, either express or implied, of appropriation of land or some interest or easement ·therein to public use, and acceptance thereof, either express or implied (when acceptance is required) constitute dedication. The intention of the owner to dedicate and acceptance thereof· by the public are the essential elements of a complete dedication.' *Green v. Miller,* 161 N. C., 24; *Elizabeth City v. Commander,* 176 N. C., 26; *Willson v. Dowling,* 179 N. C., 542; *Irwin v. Charlotte,* 193 N. C., 109." *Wright v. Lake Waccamaw,* 200 N. C., 616.

In *Wright's case, supra,* at p. 618, is the following: "In case of a direct dedication of land to the public use there should ordinarily be some evidence of acceptance; for as declared in *S. v. Fisher,* 117 N. C., 733, 739, 'The owner of land cannot, by executing a deed to the public conveying a right of way to a highway, compel the authorities to assume the burden of repairing it unless the properly constituted agents of the county or town accept it.' But where dedication is relied upon as implied from adverse user or where adverse user is invoked under the doctrine of prescription there must be evidence not only that the way was used for the requisite period, but that the user was adverse. *Haggard v. Mitchell, supra* (180 N. C., 255); *Draper v. Conner,* 187 N. C., 18; *Weaver v. Pitts,* 191 N. C., 747. The burden of showing adverse user is upon the person who asserts it. *S. v. Fisher, supra."*

It is conceded that the *locus in quo* has never been purchased by defendant from plaintiff.

In *Hast v. Piedmont, etc., R. Co.* (West·Va.), 44 S. E., at p. 156, we find the following: "Now, the mere opening of this lot to the public use is not adequate to evince an irrevocable purpose to dedicate, for we

may attribute that use to a mere license, rather than an intent to dedicate. It is so common for railroad companies to let their lots lie open, that we attribute it to license—mere permissive use—not an intent to dedicate. Nor does the fact that the company purchased this lot with an intent to dedicate it bind the company, as it might change its notion. There is not such an unequivocal act as speaks unalterably an intention to dedicate. No writing is necessary to make a valid declaration of dedication."

In *Tise v. Whitaker*, 146 N. C., at p. 375-6: "It is well understood with us that the right to a public way cannot be acquired by adverse user, and by that alone, for any period short of twenty years. It is also established that, if there is a dedication by the owner, completed by acceptance on the part of the public, or by persons in a position to act for them, the right at once arises, and the time of user is no longer material. The dedication may be either in express terms, or it may be implied from conduct on the part of the owner; and, while an intent to dedicate on the part of the owner is usually required, it is also held that the conduct of the owner may, under certain circumstances, work a dedication of a right of way on his part, though an actual intent to dedicate may not exist. These principles are very generally recognized and have been applied with us in numerous and well-considered decisions. . . . If the intent to dedicate is absent, then there is no valid dedication. The intent which the law means, however, is not a secret one, but is that which is expressed in the visible conduct and open acts of the owner. The public, as well as individuals, have a right to rely on the conduct of the owner as indicative of his intent. If the acts are such as would fairly and reasonably lead an ordinarily prudent man to infer an intent to dedicate, and they are so received and acted upon by the public, the owner cannot, after acceptance by the public, recall the appropriation. Regard is to be had to the character and effect of the open and known acts, and not to any latent or hidden purpose." *Land Co. v. Murphy*, 179 N. C., 133.

The questions here presented, was there sufficient evidence to be submitted to the jury (1) of the intention of the plaintiff railroad company to dedicate a part of the railroad depot property above set forth for a street and the acceptance thereof by the public; (2) was plaintiff railroad company estopped; (3) did the town of Ahoskie by adverse user for twenty years, acquire title to the property? We think not. In the first place, the property was originally acquired solely for depot purposes, and in the plaintiff's deed is the following in the *habendum* clause: "As long as it shall be used for a depot." In the second place, defendant does not contend that it has paid anything for the *locus in quo* or ever purchased or condemned same.

A. T. Summey, civil engineer, witness for the plaintiff, speaking in regard to the *locus in quo,* testified in part: "The open spaces about which I was asked around the depot and on the northerly and westerly sides thereof are necessary for teams and vehicles getting to and from the depot, in moving freight and for passengers alighting. Ample space was allowed for those purposes. From my observation the ground around the depot had been used for these purposes."

John E. Vann, witness for plaintiff, testified in part: "I am attorney of the A. C. L. Railroad Company, and I have been 25 years or more. I represented the railroad company at the meeting of the town board on 10 September, 1923, minutes of which have just been introduced, and presented the contract referred to therein. That was before the paving was done according to my recollection. I was frequently in contact with the town authorities as to the railroad's rights in the matter. I think I attended the hearing before the mayor and councilmen in 1925, at which this protest was filed. Mr. Williams, I think, was mayor. Both Mr. Phelps and I were there and signed the protest. . . . In 1892, or thereabouts, the area acquired by the railroad company was in the woods, and it used to be rabbit ground where the depot stands. The railroad company cleaned it up, and that included the area now in controversy and clear on down further east. When the ground was cleared and the building and other facilities erected the public began using it in going to and from the depot."

N. E. White, agent of plaintiff and a witness for plaintiff, testified in part: "The street paving started in 1925. I talked to Mayor Williams several times about it. Had a conversation with him about the execution of an agreement between the town and the railroad in connection with the street. I went to him about it several times. When the paper was not executed I told them not to proceed. I made the statement to Mayor Williams and to the contractor, Mr. Miller, but they went ahead anyway. I was acting under instructions of the railroad company in giving them that notice. . . . There are one or two fire hydrants over there which were put there prior to the street paving, according to my recollection, and the town water line was already there. The poles, wires and street lights were there."

In 1921 some gravel was put on the so-called Railroad Street. The ordinary improvements made by the town of Ahoskie in regard to fire hydrants, street lights, etc., and gravel put on so-called Railroad Street, in the depot locality, were those usual things due the public in general in a public place, and the sale of certain lots facing on depot property, under the facts and circumstances of this case with the other evidence of defendant, is not of such probative value to show an intentional dedi-

cation and acceptance, neither estoppel nor adverse user for twenty years. Plaintiff had title to the *locus in quo* duly recorded. Neighborly conduct either on the part of a person or corporation ought not to be so construed as to take their property, unless it has such probative force as to show adverse user for twenty years. Much of defendant's evidence is in the nature of omissions by plaintiff railroad company in not being unneighborly and chasing trespassers off its property. The fact that this was not done, cannot be held for acquiescence or adverse user on the part of defendants. This goes too far, and we cannot agree to this and other contentions of defendant.

We think certain incompetent evidence should have been excluded by the court below, and, with this evidence excluded, there was no sufficient evidence to be submitted to the jury of an adverse user by the public of the *locus in quo* for twenty years. We think the evidence indicative only of a permissive user. The land can and should be condemned in the present action for a street and the amount of street improvement assessment deducted from the amount of damage recovered by plaintiff, if any. *Efird v. Winston-Salem, supra.* For the reasons given, the judgment below is

Reversed.